# State of Vermont v. Roger Rocheleau

[451 A.2d 1144]

No. 308-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed September 7, 1982

*Marianne Lipscombe,* Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Robert Ponzio,* Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

*Martin & Paolini, P.C., Lisa Baer,* Law Clerk (On the Brief), Barre, for amicus curiae ACLU.

**Peck, J.** The defendant, Roger Rocheleau, was charged with unlawful possession of a regulated drug (marijuana) with the intent to sell, 18 V.S.A. § 4224(e), but was convicted after trial by jury of the lesser included offense of unlawful possession of marijuana. 18 V.S.A. § 4224(a). On appeal the defendant claims that the trial court erred (1) in denying his motion to prevent the use of the marijuana as evidence, and (2) in refusing to permit him to present a religious defense to the charge. We find both arguments to be without merit and affirm.

The essential facts are not in dispute. Around 1:00 a.m. on December 22, 1979, the defendant entered the men's restroom of a St. Albans, Vermont, nightclub. Shortly thereafter a college student entered the room and asked aloud, "Does anybody got any dope?" This general inquiry produced an immediate response from the defendant, who brought forth a plastic sandwich bag which contained a green leafy substance. At that moment an off-duty Vermont deputy game warden emerged from a partitioned toilet area. He observed the defendant and the student jointly holding the plastic bag and, believing it contained marijuana, seized it. The officer promptly advised that he was a game warden and was acting pursuant to the authority of his office. He then proceeded to detain virtually all the occupants of the restroom, including the defendant. The St. Albans Police arrived and the warden handed them the plastic bag, which was later determined to contain marijuana.

## I.

Prior to trial the defendant moved to suppress the bag of marijuana as the fruit of an "unlawful search and detention." The motion was apparently based on two separate grounds: first, that the game warden lacked probable cause to believe the bag contained marijuana at the time he seized it, *State* v. *Phillips,* 140 Vt. 210, 215, 436 A.2d 746, 749 (1981), and

second, that the game warden's actions exceeded his statutory law enforcement powers. It is the trial court's resolution of the latter argument that is now challenged by the defendant.

In a written opinion, the trial court recognized that in Vermont a game warden has limited enforcement powers, 10 V.S.A. §§ 4192–4194, 4198, none of which were applicable in this case. Nevertheless, the court concluded that under the common law the game warden was entitled to seize the marijuana and detain the defendant. See *Spalding* v. *Preston,* 21 Vt. 9, 15 (1848). It reasoned that in the circumstances of this case the game warden should be considered a private citizen and as such permitted to arrest an individual committing a felony in his presence.[1] Although we do not adopt the trial court's reasoning, we nonetheless hold that it correctly denied the defendant's motion to suppress the marijuana. See *State* v. *Bevins,* 140 Vt. 415, 420, 439 A.2d 271, 273 (1981) (ruling by trial court will be affirmed if it reached the right result even if based on the wrong reason).

A.

Although not briefed with great precision, it appears that on appeal the defendant asserts that the marijuana must be suppressed as a matter of federal constitutional law.[2] The parties have attempted to analyze the game warden's seizure of the evidence under the search incident to arrest doctrine articulated in *Chimel* v. *California,* 395 U.S. 752 (1969). We find this analysis inapplicable under the facts of this case.

At no time did the game warden conduct a search of the defendant within the meaning of the Fourth Amendment. The

---

[1] The defendant asserts that the trial court's conclusion is erroneous because at common law a private citizen could lawfully arrest only if a felony had in fact been committed. See R. Perkins, Criminal Law at 982 (2d ed. 1969). And, argues the defendant, since the jury found him guilty only of possession, a misdemeanor, the marijuana should have been suppressed as the fruit of an illegal arrest. Our holding *infra* eliminates the need for us to decide the merits of this argument.

[2] Neither at trial nor on appeal has the defendant argued that the Vermont Constitution mandates suppression of the marijuana. Accordingly, the issue has not been preserved for appellate review. *State* v. *Durling,* 140 Vt. 491, 496, 442 A.2d 455, 458 (1981).

defendant openly displayed the marijuana to public view in a public facility. The game warden was lawfully present when he observed the transaction and then, according to the trial court's findings, "grabbed the plastic bag from the hands of the defendant . . . knowing it to be marijuana from previous contacts with the substance as a guard at the correctional facility." Since the seizure of the evidence preceded any detention of the defendant we must determine not whether a constitutional arrest took place but whether the warrantless seizure was itself reasonable under the facts of this case. See 1 W. LaFave, Search and Seizure § 2.2, at 245 (1978).

Defendant knowingly exposed and offered the marijuana openly in a public place, an area which was not, in itself, entitled to Fourth Amendment protection. Moreover, the bag itself was transparent so it did not need to be opened to determine its contents. Under such circumstances he had no reasonable expectation of privacy with respect to the illicit drug. Under similar circumstances the United States Supreme Court ruled in a marijuana case that the defendant had no Fourth Amendment rights of privacy entitling him to an application of the exclusionary rule with respect to marijuana sold to an undercover federal narcotics agent. *Lewis* v. *United States*, 385 U.S. 206, 211–12 (1966). In a more recent case the Supreme Court stated:

> [O]bjects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.

*Payton* v. *New York*, 445 U.S. 573, 587 (1980).

■ The doctrine of knowing public exposure is well established. See C. Whitebread, Constitutional Criminal Procedure, 34–37 (1978). We hold it is applicable to the instant case. There was no error in refusing to suppress the bag of marijuana, as an illegal seizure.

■ We have no difficulty, moreover, in concluding that the seizure of the marijuana fell within the exigent circumstances exception to the warrant requirement. See *State* v. *Badger*,

141 Vt. 430, 447, 450 A.2d 336, 346 (1982). The game warden unquestionably had sufficient probable cause to believe the evidence seized incriminated the defendant. *Id.; State* v. *Murray,* 134 Vt. 115, 119, 353 A.2d 351, 355 (1976). Furthermore, if the game warden had attempted to secure a warrant, in all likelihood the defendant and the evidence would both have disappeared without a trace. Accordingly, it was entirely reasonable for the game warden, upon literally stumbling across highly incriminating evidence, to seize it. *United States* v. *Sedillo,* 496 F.2d 151, 153 (9th Cir.) (Hufstedler, J., dissenting), *cert. denied,* 419 U.S. 947 (1974). We hold that the seizure was not in violation of the defendant's Fourth Amendment rights.

### B.

Having determined that the Fourth Amendment does not prohibit the introduction of the marijuana at trial, we must now consider the defendant's claim that we should nonetheless apply an exclusionary rule here because the game warden was acting beyond his statutory authority when he seized the marijuana and detained the defendant. The State concedes that the statutes specifically enumerating the powers and duties of game wardens, 10 V.S.A. §§ 4192–4194, do not grant authority to search, seize or arrest individuals engaged in the activities attributed to the defendant. See *Langle* v. *Bingham,* 447 F. Supp. 934, 939 (D. Vt. 1978). Moreover, while those powers are extended to be co-equal with other law enforcement officers upon the successful completion of a prescribed training program, 10 V.S.A. § 4198, the warden here had not completed such a program. Thus the defendant is correct in his contention that the game warden acted beyond the statutory authority of his office when he seized the marijuana.

This does not, however, mean that imposition of an exclusionary rule on this basis is required. See, e.g., *City of Kettering* v. *Hollen,* 64 Ohio St. 2d 232, 416 N.E.2d 598 (1980) (evidence secured by arrest unauthorized under state law not to be suppressed); *State* v. *Sundberg,* 611 P.2d 44 (Alaska 1980) (evidence obtained after arrest which was effectuated by excessive force in violation of statute is not subject to exclusion); *State* v. *Eubanks,* 283 N.C. 556, 196 S.E.2d 706 (1973)

(arrest determined to be illegal under state law does not require suppression of evidence).

█ Without denigrating the important values promoted by the statutes limiting the law enforcement powers of game wardens, we believe that exclusion of concededly relevant evidence because they were exceeded is unnecessary and would be inconsistent with the legislature's intent. The legislature itself gave teeth to the statutes establishing the boundaries of the authority of game wardens to engage in law enforcement activities. 10 V.S.A. § 4198 provides an express sanction against game wardens who exceed their statutory authority. That statute affords only those game wardens who have successfully completed a specified training course certain immunities and defenses from civil suit for acts done in the course of their employment. Game wardens who fail to comply with § 4198 yet engage in unauthorized activities face potential personal liability for damages in civil actions. In light of this statutory sanction it is inappropriate to apply an exclusionary rule as an additional sanction based on the fact that the game warden may have exceeded his statutory authority.

## II.

Finally, the defendant argues that the trial court erred in refusing to permit the jury to pass on his claim that he possessed marijuana in connection with his practice of a religion known as Tantric Buddhism. The defendant maintains that the court's refusal to allow him to testify and to charge the jury as to a "religious defense" violated his First Amendment right to freedom of religion.

Although we have never before had occasion to consider such a claim, a number of courts, both state and federal, have examined the First Amendment issue presented here. E.g., *State* v. *Brashear*, 92 N.M. 622, 593 P.2d 63 (Ct. App. 1979); *Randall* v. *Wyrick*, 441 F. Supp. 312 (W.D. Miss. 1977); *Leary* v. *United States*, 383 F.2d 851 (5th Cir. 1967), *rev'd on other grounds*, 395 U.S. 6 (1969). From our review of these cases and other relevant precedent we hold that the instructions proposed by the defendant were properly rejected and that there was no denial of the defendant's rights under the constitution of the United States.

■ For purposes of analysis we assume that Tantric Buddhism is a genuine religion and that the defendant fully subscribes to its doctrines, which include the use of marijuana for spiritual purposes. Thus the defendant is entitled to invoke the full constitutional guarantees for free religious expression. *United States* v. *Kuch*, 288 F. Supp. 439 (D.D.C. 1968). Accordingly we must "balance [the State's] interest in preventing the damages of narcotic drugs, as reflected by legislation, against [the defendant's] interest in the practice of his religion." *Randall* v. *Wyrick, supra,* 441 F. Supp. at 315. See also *Wisconsin* v. *Yoder,* 406 U.S. 205 (1972); *Sherbert* v. *Verner,* 374 U.S. 398 (1963). We conclude that by the application of this test the substantial interest of the state in regulating the use and distribution of marijuana must prevail over the conflicting interest of the defendant in using marijuana in the practice of his religion.

■■ The legislature has determined, with one limited exception,[3] that one possessing or distributing marijuana is subject to criminal penalties. 18 V.S.A. § 4224. "This legislation reflects a legislative judgment that prohibition of the use and distribution of marijuana is a substantial interest of the State." *State* v. *Brashear, supra,* 92 N.M. at 629, 593 P.2d at 70. Furthermore it is obvious that recognition of the religious exemption advanced by the defendant would significantly frustrate this state interest. The administrative burden of judging such claims would make these criminal laws difficult if not impossible to enforce. It is not the role of this Court to substitute its judgment for that of the legislature in such matters where, as here, the legislation challenged has a rational basis. Cf. *United States* v. *Carolene Products Co.,* 304 U.S. 144, 153 (1938).

■ Opposed to this compelling state interest in regulating marijuana is the defendant's claim that he uses the drug "in connection with" his religious practices. The defendant himself characterized the use of marijuana to "facilitate the perception of Samadhi." He did not assert, nor does he now, that he would be unable to practice his religion without the use of

---

[3] See 18 V.S.A. § 4471 where the legislature has legalized the distribution of cannabis under strict guidelines for medical reasons.

marijuana. See *People* v. *Mullins*, 50 Cal. App. 3d 61, 123 Cal. Rptr. 201 (1975). Moreover, although we do not question the sincerity of the defendant's religious beliefs, it is difficult to accept that he was actually practicing his religion while in the restroom of a nightclub. Under these facts we believe it clear that "there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." *Wisconsin* v. *Yoder, supra,* 406 U.S. at 214. There has been no abridgment of the defendant's First Amendment rights.

*Judgment affirmed.*